UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| FRANCIS MCWILLIAMS, Individually and on behalf of all others similarly situated, | ) ) ) ) | No. _____ |
| Plaintiff, | ) ) ) | **NOTICE OF REMOVAL** |
| vs. | ) ) | |
| AETNA HEALTH INSURANCE OF IOWA, INC. and THE RAWLINGS COMPANY LLC, | ) ) ) | |
| Defendants. | | |

Defendants Aetna Health Insurance of Iowa, Inc. ("Aetna") and The Rawlings Company LLC ("Rawlings") (collectively, "Defendants") hereby remove this action to the United States District Court for the Southern District of Iowa, Central Division. In support of removal, Defendants state as follows:

**State Court Filings**

1.      On or about May 8, 2024, Plaintiff Francis McWilliams, filed a Petition and Jury Demand in the Iowa District Court for Polk County, styled *Francis McWilliams v. The Rawlings Co et al*, Case No. LACL158819, in the Iowa District Court in and for Polk County (the "Petition.") at D003. A true and correct copy of the Petition is attached as Exhibit A.

2.      That same date, Plaintiff filed an Original Notice ("Rawlings Original Notice") addressed to Rawlings at D0001.  A true and correct copy of the Rawlings Original Notice is attached as Exhibit B.

3.     That same date, Plaintiff filed an Original Notice ("Aetna Original Notice") addressed to Aetna at D0004.  A true and correct copy of the Original Notice is attached as Exhibit C.

4.     On May 16, 2024, Plaintiff filed a Return of Original Notice at D0005 stating Aetna was served on May 15, 2024 ("Aetna Return of Service"). A true and correct copy of the Aetna Return of Service is attached as Exhibit D.

5.     On May 24, 2024, Plaintiff filed a Return of Original Notice at D0006 stating Rawlings was served on May 20, 2024 ("Rawlings Return of Service"). A true and correct copy of the Aetna Return of Service is attached as Exhibit E.

6.     Pursuant to LR 81(a)(2), Defendants states there are no pending motions in the state court action.

7.     Pursuant to LR 81(a)(3), the following counsel have appeared in the state court action:

For the Plaintiff:

Marc S. Harding
HARDING LAW OFFICE
1217 Army Post Road
Des Moines, IA 50315
Telephone: (515) 287-1454
Facsimile: (515) 287-1442
E-mail: marc@iowalawattorneys.com

Jeffrey M. Lipman
LIPMAN LAW FIRM
1454 30th Street, Ste. 205
West Des Moines, IA 50266
Telephone: (515) 276-3411
Facsimile: (515) 276-3736
E-mail: jeff@lipmanlawfirm.com

Shane Michael
MICHAEL LAW FIRM
1200 Valley West Drive, Ste. 204
West Des Moines, IA 50266
Telephone: (515) 699-8645
Facsimile: (515) 225-6999
E-mail: MichaelLawFirm@gmail.com

Christian J. Crocker
HARDING LAW OFFICE
1217 Army Post Road
Des Moines, IA 50315
Telephone: (515) 287-1454
Facsimile: (515) 287-1442
E-mail: christian@iowalegal.com

**JURISDICTION**

8.     This action is removable under the Federal Officer Removal statute, 28 U.S.C. § 1442(a)(l), because Plaintiff has sued Aetna and Rawlings for acts that they took "under color of" federal law when administering Medicare benefits under the supervision and control of the Centers for Medicare & Medicaid Services ("CMS"), a subunit of the U.S. Department of Health and Human Services.

**PARTIES**

9.     Plaintiff, Francis McWilliams, is alleges he is the beneficiary under a Medicare Advantage plan who elected to receive benefits from Aetna. Petition, ¶¶ 3, 33.

10.     Aetna is a Medicare Advantage organization ("MA" organization or "MAO") that provides Medicare benefits under Part C of the Medicare Act to beneficiaries that elect to enroll in its Medicare Advantage plans. *See* 42 U.S.C. § 1395w-22(a). In its capacity as an MAO administering benefits provided under the Medicare Act, Aetna was acting "under color of" federal authority for purposes of 28 U.S.C. § 1442(a)(l) removal jurisdiction. *See, e.g., Gordy v. CareMore Health Plan*, No. SACV1900048JVSJDEX, 2019 WL 1237421, at *5 (C.D. Cal. Mar. 18, 2019); *Hepstall v. Humana Health Plan, Inc.*, No. CV 18-0163-CG-MU, 2018 WL 4677871 (S.D. Ala. July 3, 2018), *report and recommendation adopted*, No. CV 18-0163-JB-MU, 2018 WL 4927267 (S.D. Ala. Oct. 9, 2018); *Inchauspe v. Scan Health Plan*, No. 217CV06011CASJCX, 2018 WL 566790 (C.D. Cal. Jan. 23, 2018); *Body & Mind Acupuncture v. Humana Health Plan, Inc.*, No. 1:16CV211, 2017 WL 653270, at *1 (N.D.W. Va. Feb. 16, 2017); *Assocs. Rehab. Recovery, Inc. v. Humana Med. Plan, Inc.*, 76 F. Supp. 3d 1388, 1389 (S.D. Fla. 2014); *Einhorn v. CarePlus Health Plans, Inc.*, 43 F. Supp. 3d 1268 (S.D. Fla. 2014);

*Cupp v. Johns and Humana Ins. Co.*, No. 2:14-CV-02016, 2014 WL 916489 (W.D. Ark. Mar. 10, 2014); *Manorcare Potomac v. Understein*, No. 8:02-CV-1177-T-23EAJ, 2002 WL 31426705 (M.D. Fla. Oct. 16, 2002); *see also Potts v. Rawlings Co., LLC*, 897 F. Supp. 2d 185, 188 (S.D.N.Y. 2012) (Medicare Part C litigation removed in part on federal officer removal grounds); *Lifecare Hasps., Inc v. Ochsner Health Plan, Inc.*, 139 F. Supp. 2d 768, 770 (W.D. La. 2001) (same); *Green v. Humana Ins. Co.*, 2013 U.S. Dist. LEXIS 162416 (S.D. Miss. Nov. 14, 2013) (same).

## FACTUAL BACKGROUND

11.     Plaintiff claims that he was "a former medical malpractice plaintiff who had a policy of medical insurance issued by Aetna through which Aetna paid medical bills for the injuries suffered by Plaintiff as a result of that medical malpractice."  Petition, ¶ 4.

12.     Plaintiff further claims, "Thereafter, Aetna and Rawlings (its subrogation collection agent), extorted Plaintiff, claiming it had a subrogation lien for the full amount of medical bills Aetna paid and forcing Plaintiff to pay Defendants before Aetna and Rawlings would release an alleged lien.

13.     The Petition was served on Aetna on May 15, 2024.

14.     The Petition was served on Rawlings on May 20, 2024.

15.     This removal notice is timely under 28 U.S.C. § 1446 because it is filed within 30 days of those dates. *See* 28 U.S.C. § 1446(b)(1).

## STATUTORY AND REGULATORY FRAMEWORK

### I.     The Medicare Advantage Program.

16.     Medicare is a system of federally funded health insurance for people 65 and older, certain disabled persons, and persons with End Stage Renal Disease. Congress enacted the

Medicare Program as Title XVIII of the Social Security Act ("Medicare Act"), 42 U.S.C. § 1395, *et seq.* Medicare is an enormous and complex federal program.

17.     Medicare enrollees may elect to receive their benefits in one of two ways. First, they may receive their health insurance benefits under Medicare Parts A and B, which provide hospital insurance and coverage for medically necessary outpatient and physician services on a fee-for-service basis. 42 U.S.C. § 1395w-21(a)(1)(A).

18.     Alternatively, Medicare participants may enroll in a Medicare Part C plan. *Id.* § 1395w-21(a)(l)(B). Originally called Medicare+Choice, Medicare Part C is now known as "Medicare Advantage," and the insurers that administer it—such as Aetna (and its subcontractor Rawlings)—are known as MA organizations. Congress enacted this program in 1997 to provide an alternative to the traditional fee-for-service model and "enable the Medicare program to utilize innovations that have helped the private market contain costs and expand health care delivery options." H.R. Rep. No. 105-217, at 585 (1997) (Conf. Rep.).

19.     MA is not private insurance. Part C plans are funded out of the same trust funds that support Medicare Parts A and B, *see* 42 U.S.C. § 1395w-23(t), and are governed exclusively by the Medicare Act and its implementing regulations. *See Humana Med. Plan, Inc. v. Western Heritage Ins. Co.*, 832 F.3d 1229, 1235 (11th Cir. 2016) ("Under the Medicare Advantage program, a private insurance company, operating as an MAO, administers the provision of Medicare benefits pursuant to a contract with CMS."). Moreover, MA organizations "do not issue a Medicare 'insurance policy' but, rather, send out a document describing the Medicare benefits that enrollees receive," known as an "Evidence of Coverage." E. Kuo, *Developments in Medicare Secondary Payer Law*, 2013 Health Law Handbook § 12.5. That document is written

by, and may only be altered with the approval of, the Secretary of Health and Human Services ("Secretary"). 42 C.F.R. § 422.111(d).

20.    Each MA organization must enter into a contract with the Secretary. *See* 42 U.S.C. § 1395w-27. Under that contract, the MA organization generally receives a fixed amount per enrollee and must provide at least the same level of benefits that enrollees would receive under traditional Medicare. *See id.* § 1395w-22. MA organizations are thus incentivized to provide health insurance more efficiently than under the traditional fee-for-service model, for example by providing opportunities for more cost-saving preventative care.

21.    Because the Medicare Part C program is a federal program, operated under federal rules and funded by federal dollars, Medicare Part C expressly preempts state law. *See* 42 U.S.C. § 1395w-26(b)(3); 42 C.F.R. §§ 422.108(f), 422.402; *Do Sung Uhm v. Humana, Inc.*, 620 F.3d 1134, 1149 (9th Cir. 2010).

## II.    Medicare Secondary Payer Law

22.    In 1980, in response to skyrocketing costs, Congress began enacting the provisions that now comprise the Medicare Secondary Payer Law ("MSP Law"), 42 U.S.C. § 1395y(b). The primary intent underlying the MSP law is to shift the financial burden of health care from the Medicare program to private insurers and tortfeasors and thereby lower the overall cost of the Medicare program.

23.    The MSP law is codified as 42 U.S.C. § 1395y(b), in Part E of the Medicare Act. The terms of the MSP law make clear that it is applicable to all payments "under this Subchapter," 42 U.S.C. § 1395y(b)(2)(A), which includes payments made by MAOs under Part C of the Act.

24.      Moreover, Part C of the Medicare Act expressly incorporates the MSP law into the Medicare Advantage program, authorizing an MAO to charge a primary plan or an individual that has been paid by a primary plan "under circumstances in which payment under this title is made secondary pursuant to" the MSP law (§ 1395y(b)(2)). 42 U.S.C. §1395w- 22(a)(4). In so doing, Congress expressed its understanding and intention that the MSP law applied to Medicare Part C.

The MSP law creates a federal coordination of benefits scheme, in which worker's compensation, liability insurance, and no-fault insurance, are primary, and Medicare benefits are secondary. *See* 42 U.S.C. § 1395y(b)(2); 42 C.F.R. § 422.108(b)(3). This includes tortfeasors (and their insurers), who are defined by the Medicare Act to be self-insured. *See, e.g.*, *Aetna Life Ins. Co. v. Big Y Foods, Inc.*, 52 F.4th 66, 75 (2d Cir. 2022); *Western Heritage Ins. Co.*, 832 F.3d at 1233.

25.      When an MAO makes a payment for medical services that are the responsibility of a primary plan under the MSP law, those payments are conditional, whether the primary plan's liability was established at the time of the conditional payment or not. Federal regulations define the term "conditional payment" under the MSP law to mean "a Medicare payment for services for which another payer is responsible, made either on the bases set forth in subparts C through H of this part, or because the intermediary or carrier did not know that the other coverage existed." 42 C.F.R. § 411.21.

26.      Because Medicare Advantage is simply another way in which Medicare beneficiaries may receive Medicare benefits, the same MSP rules apply. *See* CMS, <u>Medicare Managed Care Manual</u>, Chap. 4, § 130.3 (Rev. 107, 06-22-12) ("In the case of the presence of workers compensation, no-fault and liability insurance (including self-insurance), Medicare

makes conditional payments if the other insurance does not pay promptly. These conditional payments are subject to recovery when and if the other insurance does make payment.").

27.    CMS has interpreted the MSP Law as it applies to MAOs in a formal regulation, which states that "[t]he MAO will exercise the same rights to recover from a primary plan, entity or individual, that the Secretary exercises under the MSP regulations." 42 C.F.R. § 422.108(f). An entity that receives payment from a primary plan shall therefore be required to reimburse an MAO for conditional Medicare payments.

28.    CMS has further explained that the regulation assigns MAOs "the right, under existing Federal law, to collect for services for which Medicare is not the primary payer" using "the same rights of recovery that the Secretary exercises under the Original Medicare MSP regulations." CMS, Memorandum: Medicare Secondary Payment Subrogation Rights (Dec. 5, 2011).

29.    The MSP Law makes clear that "a primary plan, and an entity that receives payment from a primary plan, shall reimburse" any conditional Medicare payments. 42 U.S.C. § 1395y(b)(2)(B)(ii).

30.    Indeed, An MAO that has advanced Medicare benefits has standing to sue a primary plan for double damages under the MSP private cause of action if they are not reimbursed for conditional payments. *See, e.g.*, *Aetna Life Ins. Co. v. Big Y Foods, Inc.*, 52 F.4th 66 (2d Cir. 2022); *Humana Med. Plan, Inc. v. Western Heritage Ins. Co.*, 832 F.3d 1229 (11th Cir. 2016); *In re Avandia Mktg.*, 685 F.3d 353 (3d Cir. 2012); *Humana Ins. Co. v. Paris Blank LLP*, 187 F. Supp. 3d 676 (E.D. Va. 2016); *Cariten Health Plan, Inc. v. Mid-Century Ins. Co.*, 2015 WL 5449221, at *6 (E.D. Tenn. Sep. 1, 2015); *Collins v. Wellcare Healthcare Plans, Inc.*,

73 F. Supp. 3d 653, 665 (E.D. La. 2014); *Humana Ins. Co. v. Farmers Tex. Cnty. Mut. Ins. Co.*, 95 F. Supp. 3d 983, 986 (W.D. Tex. 2014).

### III.    Mandatory Administrative Exhaustion Requirements

31.    The Medicare Act contains a "nonwaivable and nonexcusable requirement that an individual present a claim [arising under the Medicare Act] to the agency before raising it in court." *Shalala v. Ill. Council on Long Term Care*, 529 U.S. 1, 15 (2000).[1]

32.    Enrollees who wish to challenge benefits determinations by their MA organization must therefore participate in an administrative review process that parallels—and eventually merges with—the appeal process required for Medicare Part A and B participants. *See Heckler v. Ringer*, 466 U.S. 602, 607 (1984) (describing traditional Medicare appeals process); *see also Glob. Rescue Jets, LLC v. Kaiser Found. Health Plan, Inc.*, 30 F.4th 905, 911 (9th Cir. 2022) (MA enrollees must exhaust claims arising under Medicare Act); *Western Heritage Ins. Co.*, 832 F.3d at 1240 (MA enrollee did not exhaust dispute concerning reimbursement demand); *Giesse v. Sec'y of Dep't of Health & Human Servs.*, 522 F.3d 697, 703 (6th Cir. 2008) (summarizing Medicare Advantage administrative appeal requirements). That appeal process is governed by federal statutes and regulations. *See* 42 U.S.C. § 1395w-22(g); 42 C.F.R. § 422.560 *et seq.*

33.    There are four separate levels of administrative review that must be completed before an enrollee may file suit on any claim arising under the Medicare Act:

      (a)    First, the MA Organization must determine whether an enrollee "is entitled to receive a health service . . . and the amount (if any) that the individual

---

[1] The Act creates this mandatory exhaustion requirement by cross-references to the exhaustion and judicial review provisions of the Social Security Act, contained in 42 U.S.C. §§ 405(g) and (h). *See* 42 U.S.C. § 1395w-22(g)(5) (exhaustion requirement for Medicare Advantage enrollees); 42 C.F.R.§ 422.612 (same); *Uhm*, 620 F.3d 1141 n.9 (discussing Part C's exhaustion and judicial review provisions).

is required to pay with respect to such service." 42 U.S.C. § 1395w-22(g)(l)(A). This is known as an "organization determination" in Medicare-speak. If the MAO denies coverage, it must inform the enrollee in writing and "include a statement in understandable language of the reasons for the denial and a description of the reconsideration and appeals processes." *Id.* § 1395w-22(g)(1)(B).

    (b)    If requested by an enrollee, the MAO must reconsider its organization determination within sixty days. *Id.* § 1395w-22(g)(2)(A).

    (c)    Next, any adverse reconsideration decision may be appealed to an "independent, outside entity" under contract with the Secretary to hear such appeals. *Id.* § 1395w-22(g)(4).

    (d)    Finally, an enrollee dissatisfied with the determination of that external review entity is entitled to a hearing before the Secretary to the same extent as a beneficiary who elects to receive benefits under the traditional Medicare fee-for-service program. *Id.* § 1395w-22(g)(5). That involves, first, a hearing before an administrative law judge followed, if necessary, by an appeal to the Medicare Appeals Council—the very same entity that issues final determinations on behalf of the Secretary in Medicare Part A/B appeals.

    34.    At the conclusion of this appeal process, an enrollee dissatisfied with the decision of the Medicare Appeals Council may seek judicial review in federal district court directly against the Secretary. *Id.* §§ 405(g), 1395w-22(g)(5). Such suits may not be brought in state court or filed directly against the MA organization. *See id.* § 405(h) ("No findings of fact or decision of the [Secretary] shall be reviewed by any person, tribunal, or governmental agency except as herein provided . . ..").

    35.    Exhaustion is required for any claim "arising under" the Medicare Act. *See Shalala,* 529 U.S. at 15; *Heckler*, 466 U.S. at 606, 622. That includes claims arising under Medicare Part C, which is at issue here. *See Glob. Rescue Jets, LLC*, 30 F.4th at 911; *Giesse*, 522 F.3d at 702; *Physicians Home Health Infusion, P.C. v. UnitedHealthcare of Midwest, Inc.*, No. 4:18-cv-01959 PLC, 2019 WL 6115153, at *11 (E.D. Mo. Nov. 18, 2019); *Haaland v. Presbyterian Health Plan, Inc.*, 292 F. Supp. 3d 1222, 1234 (D.N.M. 2018); *Hepstall v. Humana Health Plan, Inc.*, 2018 WL 6588555, at *8 (S.D. Ala. Nov. 26, 2018), *report and*

*recommendation adopted*, No. CV 18-0163-JB-MU, 2018 WL 6588552 (S.D. Ala. Dec. 6, 2018); *Shakespeare v. SCAN Health Plan, Inc.*, 2018 WL 340422, at *3 (S.D. Cal. Jan. 8, 2018); *Dicrescenzo v. UnitedHealth Grp. Inc.*, 2015 WL 5472926, at *3 (D. Haw. Sept. 16, 2015); *Quinones v. UnitedHealth Grp. Inc.*, 2015 WL 3965961, at *4 (D. Haw. June 30, 2015); *Cupp*, 2014 WL 916489; *Green v. Humana Ins.* Co., 2013 U.S. Dist. LEXIS 162416 (S.D. Miss. Nov. 14, 2013); *Mann v. Reeder*, No. 1:10-CV-00133-JHM, 2011 WL 665749, at *3 (W.D. Ky. Feb. 15, 2011).

36.    A claim "'arises under' the Medicare Act if the Act provides the 'standing and substantive basis for the presentation of" plaintiff's claim. *Giesse*, 522 F.3d at 702 (quoting *Weinberger v. Salfi*, 422 U.S. 749, 760-61, (1975)).

37.    In this suit, Plaintiff alleges that Aetna and Rawlings interfered with Plaintiff's medical malpractice defendants and their insurance providers to settle medical malpractice claims and that Aetna and Rawlings interfered with those claims.  Petition, ¶¶ 46-52.

38.    Plaintiff further alleges violations of Iowa's Fair Debt Collection Practices Act (¶¶ 53-58), Civil Extortion (¶¶ 59-63), Breach of the Covenant of Good Faith and Fair Dealin (¶¶ 64-71), and Unjust Enrichment (¶¶72-76).

39.    Courts have routinely held that disputes between Medicare members and their MAOs concerning the administration of Medicare benefits "arise under" the Medicare Act and must be exhausted. *See, e.g.*, *Glob. Rescue Jets, LLC*, 30 F.4th at 911; *Haaland v. Presbyterian Health Plan, Inc.*, 292 F. Supp. 3d 1222 (D.N.M. 2018); *Hepstall v. Humana Health Plan, Inc.*, 2018 WL 6588555, at *1 (S.D. Ala. Nov. 26, 2018), *report and recommendation adopted*, No. CV 18-0163-JB-MU, 2018 WL 6588552 (S.D. Ala. Dec. 6, 2018); *Shakespeare v. SCAN Health Plan, Inc.*, 2018 WL 340422, at *3 (S.D. Cal. Jan. 8, 2018). This includes disputes concerning

coordination of benefits, like the claim at issue here. *See Dicrescenzo v. UnitedHealth Grp. Inc.,* *2015 WL 5472926, at \*3 (D. Haw. Sept. 16, 2015); Quinones v. UnitedHealth Grp. Inc.*, 2015 WL 3965961, at \*4 (D. Haw. June 30, 2015).

40.     This includes disputes about whether enrollees must reimburse MAOs (or Medicare) under the Medicare Secondary Payer law after they recover settlements or judgments from primary plans. *See, e.g.*, *Western Heritage*, 832 F.3d at 1240; *Haro v. Sebelius*, 747 F.3d 1099, 1114 (9th Cir. 2014); *Taransky v. Sec'y of U.S. Dep't of Health & Human Servs.*, 760 F.3d 307, 312 (3d Cir. 2014); *Wilson v. United States*, 405 F.3d 1002, 1012 (Fed. Cir. 2005); *Fanning v. United States*, 346 F.3d 386, 399-402 (3d Cir. 2003); *Cochran v. U.S. Health Care Fin. Admin.*, 291 F.3d 775, 779 (11th Cir. 2002); *Buckner v. Heckler*, 804 F.2d 258,259-60 (4th Cir. 1986); *In re Petition of Korff*, No. 13-CR-20600, 2016 WL 4537815, at \*5 (E.D. Mich. Aug. 31, 2016); *Collins v. Wellcare Healthcare Plans, Inc.*, 73 F. Supp. 3d 653, 661 (E.D. La. 2014); *Einhorn v. CarePlus Health Plans, Inc.*, 43 F. Supp. 3d 1329, 1332 (S.D. Fla. 2014); *Neff v. Sebelius*, No. CV 13-95-M-DWM, 2013 WL 5492938, at \*4 (D. Mont. Oct. 1, 2013); *Wright v. Sebelius*, 818 F. Supp. 2d 1153, 1160-61 (D. Neb. 2011); *Bird v. Thompson*, 315 F. Supp. 2d 369, 371-75 (S.D.N.Y. 2003); *Nygren v. United States*, 268 F. Supp. 2d 1275, 1277-81 (W.D. Wash. 2003); *Estate of Barbeaux v. Lewis*, 196 F. Supp. 2d 519, 521-22 (W.D. Mich. 2002)

41.     Notwithstanding this clear precedent, Plaintiff mistakenly alleges that the proper forum to adjudicate his Medicare Act dispute is in state court. That is incorrect.

## GROUNDS FOR REMOVAL

42.     The federal officer removal statute, 28 U.S.C. § 1442(a)(l), permits Aetna and Rawlings to remove any civil action that is against or directed to "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of

any agency thereof, in an official or individual capacity, for or relating to any act under color of such office . . ." *Id.*

43.    This statute allows removal of lawsuits even where the United States or its employees are not named as defendants in the litigation. The Supreme Court has repeatedly emphasized that "[t]he words 'acting under' are broad" and "the statute must be "liberally construed." *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 147 (2007). This rule of liberal construction best serves the statute's purpose, which "is to protect the Federal Government from the interference with its 'operations'" in part by avoiding "State-court proceedings [that] may reflect 'local prejudice' against unpopular federal laws or federal officials." *Id.* at 150.

44.    For a case to be removable under § 1442(a)(l), a defendant must show that it: (1) "is a 'person' within the meaning of the statute"; (2) "performed the actions for which it is being sued 'under color of [federal] office'"; and (3) "raised a colorable federal defense." *Bennett v. MIS Corp.*, 607 F.3d 1076, 1085 (6th Cir. 2010). Each of these factors is met here.

45.    *First*, "[Aetna and Rawlings are each] a 'person' within the meaning of the statute." *Mann*, 2010 U.S. Dist. LEXIS 134821, at *5. Under the Dictionary Act, "the words 'person' and 'whoever' include corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals." 1 U.S.C. § 1.

46.    *Second*, Aetna and Rawlings acts under color—and the direct supervision—of CMS when it adjudicates enrollees' claims for Medicare benefits, like those at issue here.

(a)    It is well-established that private companies that contract with the Secretary in order to administer the Medicare program are acting "under the direction" of federal officers. It has long been clear that Part A and B contractors are deemed to be acting under color

of federal law (for purposes of§ 1442(a)(l) removal) when administering the Medicare program pursuant to contracts with the Secretary. *See, e.g.*, *Peterson v. Blue Cross/Blue Shield*, 508 F.2d 55, 57-58 (5th Cir.), *cert. denied*, 422 U.S. 1043 (1975); *Neurological Assocs. v. Blue Cross/Blue Shield of Florida, Inc.*, 632 F. Supp. 1078, 1080 (S.D. Fla. 1986); *Group Health, Inc. v. Blue Cross Ass'n*, 587 F. Supp. 887, 890 (S.D.N.Y. 1984); *Kuenstler v. Occidental Life Ins. Co.*, 292 F. Supp. 532, 535 (C.D. Cal. 1968); *see also Ryan v. Dow Chern. Co.*, 781 F. Supp. 934, 949 (E.D.N.Y. 1992) ("Defendants in suits against private companies acting as fiscal intermediaries for the federal Medicare program have been found entitled to removal under section 1442(a)(l)." (collecting authorities)).[2]

(b)    Moreover, as noted above, courts also have held that Medicare Advantage Organizations administering Part C benefits act under color of federal law when they are coordinating benefits and pursuing recoveries from members and/or primary payers under the Medicare Secondary Payer law. *See, e.g.*, *Heino v. U.S. Ctr. for Medicare*, __ F. Supp. 3d. ___, 2023 WL 8878953, at *6 (D. Or. Dec. 22, 2023) (Aetna acted under color of federal law as an MAO); *Escarcega v. Verdugo Vista Operating Co., LP*, 2020 WL 1703181, at *7 (C.D. Cal. Apr. 8, 2020); *Einhorn*, 43 F. Supp. 3d at 1270; *Cupp.*, 2014 WL 916489, at *1; *Manorcare Potomac*, 2002 WL 31426705, at *1; *see also Potts*, 897 F. Supp. 2d at 188 (defendants removed MSP dispute based in part on federal officer removal statute); *Gen. Surgical Assocs., P.A. v. Humana Health Plan of Texas, Inc.*, No. SA-14-CA-31-OLG HJB, 2014 WL 12496771, at *5 (W.D. Tex. Apr. 21, 2014), *supplemented*, 2014 WL 12496896 (W.D. Tex. Sept. 23, 2014), *report and recommendation approved sub nom. Gen. Surgical Assocs. v. Humana Health Plan of Texas, Inc.*, No. 5:14-CV-031-RP, 2015 WL 11661755 (W.D. Tex. Feb. 4, 2015), *and report and*

---

[2] Part A and B contractors were formerly known as "fiscal intermediaries" and "carriers," but now are called "Medicare Administrative Contractors" ("MAC"). *See* 42 U.S.C. § 1395kk-1.

*recommendation approved sub nom. Gen. Surgical Assocs. v. Humana Health Plan of Texas, Inc.*, No. 5:14-CV-031-RP, 2015 WL 11661755 (W.D. Tex. Feb. 4, 2015) (Humana acted under color of federal law while serving as an MAO and administering federal employee health benefit plans).

(c)    These holdings make perfect sense; after all, Aetna and Rawlings administer its Medicare Advantage plans pursuant to contracts with the Secretary. *See* 42 U.S.C. § 1395w-27. Those contracts require MAOs to provide members with at least the same benefits they would receive under the fee-for-service Medicare program. *See id.* § 1395w-22. That includes all services deemed as "covered" services by CMS. *See* 42 C.F.R. § 422.101(a). Thus, Aetna and Rawlings made their Medicare claims processing determinations pursuant to its authority (and obligations) as a federal officer.

(d)    Perhaps most importantly, Aetna and Rawlings's benefit determinations are subject to direct oversight by CMS through the mandatory appeals process described above. If a Medicare member believes that he has been denied a benefit to which he was entitled under his plan, the only remedy is to exhaust the dispute through that appeal process, culminating in review by the Medicare Appeals Council. *See Shalala*, 529 U.S. at 15; *Giesse*, 522 F.3d at 702. If still unsatisfied at the end of that appellate process, the member's recourse is to file suit against the Secretary of Health and Aetna and Rawlings services, not against his MAO. *See* 42 U.S.C. §§ 405(h), 1395w-22(g). This further demonstrates that all benefits determinations made by an MAO are made pursuant to federal authority and oversight.

47.    *Third*, Aetna and Rawlings have more than "colorable" federal defenses to Plaintiff claims. Indeed, federal law makes clear that courts lack jurisdiction over his unexhausted claims, which are preempted in any event.

(a)      Plaintiff's claims are barred by 42 U.S.C. § 405(h), which requires administrative exhaustion of any claim arising under the Medicare Act. *See Shalala*, 529 U.S. at 15. This includes disputes about a member's entitlement to benefits under Medicare Part C. *See Giesse*, 522 F.3d at 702. As noted above, claims processing disputes between enrollees and their MAOs "arise under" the Medicare Act and must therefore be exhausted. *See id.*; *Haaland*, 292 F. Supp. 3d at 1234; *Hepstall*, 2018 WL 6588555, at *8; *Shakespeare*, 2018 WL 340422, at *3; *Dicrescenzo*, 2015 WL 5472926, at *3; *Quinones*, 2015 WL 3965961, at *4; *Cupp*, 2014 WL 916489; *Green*, 2013 U.S. Dist. LEXIS 162416; *Mann*, 2011 WL 665749, at *3.

(b)      In addition, even if Plaintiff had exhausted his administrative remedies, the Medicare Act would expressly preempt Plaintiff's state-law claims against Aetna and Rawlings. 26 U.S.C. § 1395w-26(b)(3) provides that "[t]he standards established under this part shall supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to MA plans which are offered by MA organizations under this part." *See also* 42 C.F.R § 422.108(f) ("[T]he rules established under this section supersede any State laws, regulations, contract requirements, or other standards that would otherwise apply to MA plans."). Plaintiff's asserted right to receive additional Medicare benefits from Humana is preempted because federal standards dictate the covered services that MAOs must provide enrollees. *See, e.g.*, 42 C.F.R. § 422.101(a). Thus, whether a particular service is covered by Medicare is not within the purview of state courts to resolve at all. *See, e.g.*, *Uhm*, 620 F.3d at 1143; *Snyder v. Prompt Med. Transportation, Inc.*, 131 N.E.3d 640, 653 (Ind. Ct. App. 2019), *transfer denied sub nom. Snyder v. St. Joseph Reg'l Med. Ctr.*, 2019 WL 6716127 (Ind. Dec. 5, 2019); *Hepstall*, 2018 WL 4677871 at *4.

**<u>Basis for Removal</u>**

48.    This action is removable under the Federal Officer Removal statute, 28 U.S.C. § 1442(a)(l), because Plaintiff has sued Aetna and Rawlings for acts that they took "under color of" federal law when administering Medicare benefits under the supervision and control of the Centers for Medicare & Medicaid Services ("CMS"), a subunit of the U.S. Department of Health and Human Services.

49.    The venue of this removal action is proper pursuant to 28 U.S.C. § 1442(a) because the United States District Court for the Southern District of Iowa includes the Iowa District Court in and for Polk County, where the state court action has been pending.

50.    Immediately upon filing of this Notice of Removal, Aetna and Rawlings will give written notice to Plaintiff's counsel of the removal of this case and will file a copy of this Notice of Removal with the Clerk of the Iowa District Court in and for Polk County pursuant to 28 U.S.C. §1446(d).

THEREFORE, Defendants Aetna and Rawlings, give notice that the above-captioned action is removed to this Court from the Iowa District Court for Polk County.

/s/ Keith P. Duffy       AT0010911
Nyemaster Goode, PC
700 Walnut Street, Suite 1600
Des Moines, Iowa 50309
Telephone: 515-283-3100
Facsimile: 515-283-8045
Email: cksweeney@nyemaster.com
Email: kduffy@nyemaster.com

**ATTORNEYS FOR DEFENDANT DEFENDANTS AETNA HEALTH INSURANCE OF IOWA, INC. AND THE RAWLINGS COMPANY LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on June 10, 2024, a true and correct copy of the foregoing document was on the following parties and their counsel of record via the Court's CM/ECF system.

_/s/ Kristina A. Renslow_