IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| FRANCIS MCWILLIAMS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>AETNA HEALTH OF IOWA, INC., and THE RAWLINGS COMPANY, LLC,<br><br>Defendants. | 4:24-cv-00193-SHL-WPK<br><br><br><br>**ORDER GRANTING<br>MOTION TO DISMISS** |

When Plaintiff Francis McWilliams filed a medical malpractice action in Iowa state court, Defendants—a Medicare Advantage Organization and its subrogation agent—filed a subrogation lien against any recovery McWilliams might obtain. After settling with the medical malpractice defendants and satisfying the lien, McWilliams brought this action against Defendants alleging that the filing of the lien was an act of extortion and violated other common law and statutory rights under Iowa law.

The core of McWilliams's claims is that Defendants did not have the right under the Medicare Act to file their liens or recover anything from him. It is well established, however, that claims revolving around rights and remedies under the Medicare Act are subject to an administrative exhaustion requirement, regardless of how those claims are labeled. Because McWilliams made no effort to exhaust remedies prior to filing suit, the Court lacks subject matter jurisdiction and GRANTS Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1).

## I.   FACTS.

In June 2021, McWilliams underwent a temporal artery biopsy at Mercy One Hospital. (ECF 7-2, ¶ 10.) At the time, he was a Medicare Part C beneficiary and had a Medicare Advantage plan through Defendant Aetna Health of Iowa, Inc. ("Aetna"). (ECF 1-1, ¶¶ 3, 18.) During the procedure, the physician lacerated McWilliams's facial nerve, paralyzing the left side of his face. (ECF 7-2, ¶¶ 12, 14.) As a result, McWilliams brought a medical malpractice case against the physician and hospital in state court to recover for his "past and future" mental and physical pain, loss of function and enjoyment of life, and $7,980.09 in medical bills. (Id., ¶ 15; ECF 1-1, ¶ 21.) The parties agreed to settle the case in late August 2023. (ECF 1-1, ¶ 22.)

Around the time McWilliams was negotiating his settlement, Defendant The Rawlings Company, LLC ("Rawlings Company"), Aetna's subrogation collection agent, contacted McWilliams's counsel and asserted that Aetna had a subrogation lien against McWilliams for the $7,980.09 in medical bills. (Id., ¶¶ 5, 23.) According to Rawlings Company, the basis for the lien was set forth in the Medicare Advantage plan documents, which state:

> [Y]our Medicare Advantage plan shall be subrogated to stand in the place of all rights of recovery you have against any person, entity or insurer responsible for causing your injury, illness or condition or against any person, entity or insurer listed as a primary payer above.
>
> In addition, if you receive payment from any person, entity or insurer responsible for causing your injury, illness or condition or you receive payment from any person, entity or insurer listed as a primary payer above, your Medicare Advantage plan has the right to recover from, and be reimbursed by you for all conditional payments the plan has made or will make as a result of that injury, illness or condition.
>
> Your Medicare Advantage plan will automatically have a lien, to the extend of benefits it paid for the treatment of the injury, illness or condition, upon any recovery whether by settlement, judgment or otherwise. The lien may be enforced against any party who possesses funds or proceeds representing the amount of benefits paid by the Plan including, but not limited to, you, your representatives or agents, any person, entity or insurer responsible for causing your injury, illness or condition, or any person, entity or insurer listed as a primary payer above.

(Id., ¶ 3.) McWilliams disputed the validity of the lien, arguing that Iowa law prohibits medical malpractice plaintiffs from recovering the cost of medical care paid for by government programs like Medicare. (Id., ¶ 25 (citing Iowa Code § 147.136(1).) In other words, McWilliams argued he wasn't going to recover the $7,980.09 in medical bills from the settlement, so there was no basis for Aetna to recover anything through subrogation. (Id.) Rawlings disagreed and refused to release Aetna's lien, so McWilliams eventually paid Rawlings and/or Aetna $7,980.09 to complete the settlement. (Id., ¶¶ 26–28.)

In May 2024, McWilliams brought a putative class action against Defendants in Iowa state court. (ECF 1-1.) McWilliams alleges that Defendants' practice of requiring medical malpractice plaintiffs to pay back benefits they receive following resolution of their claims constitutes tortious interference with contractual relationships (Count 1), a violation of Iowa's Fair Debt Collection Practices Act, Iowa Code § 537.7103 (Count 2), civil extortion (Count 3), a breach of the covenant

of good faith and fair dealing (Count 4), and unjust enrichment (Count 5). (See id.) Defendants removed the action to federal court (ECF 1) and now move to dismiss (ECF 7).

## II.  LEGAL STANDARDS.

Defendants move to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). As to the latter, the governing standards are straightforward. Defendants bear the burden of establishing that McWilliams has failed to state a claim upon which relief may be granted. *See Rossley v. Drake Univ.*, No. 417CV00058RGESBJ, 2017 WL 7693389, at *2 (S.D. Iowa Dec. 20, 2017) (citing *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001)). In deciding whether Defendants have satisfied that burden, the Court "assume[s] the truth of all factual allegations in the complaint and make[s] all reasonable inferences in favor of the nonmoving party." *Delker v. MasterCard Int'l, Inc.*, 21 F.4th 1019, 1024 (8th Cir. 2022). "Although detailed allegations are not required to survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019) (citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

The governing standards for Defendants' Rule 12(b)(1) motion are more complicated. Defendants' theory is that McWilliams failed to exhaust administrative remedies, which is sometimes considered an affirmative defense for which the defendant bears the burden of proof. *See Miles v. Bellfontaine Habilitation Ctr.*, 481 F.3d 1106, 1107 (8th Cir. 2007) (per curiam). This is not the case, however, when the jurisdictional challenge stems from the plaintiff's failure to exhaust remedies under Medicare. *See Midland Psychiatric Assocs., Inc. v. United States*, 145 F.3d 1000, 1003 (8th Cir. 1998). But the plaintiff in *Midland Psychiatric Associates v. United States* brought the case in federal court in the first instance and named the United States as a defendant; here, by contrast, McWilliams sued Defendants in state court in a pleading that did not name the United States as a defendant or purport to bring claims governed by federal law. The possibility of federal jurisdiction was not raised until Defendants' Notice of Removal, which alleged that Defendants are "federal officers" for purposes of 28 U.S.C. § 1442(a)(1) and act under color of the Centers for Medicare & Medicaid Services ("CMS"), a subunit of the United States Department

Case 4:24-cv-00193-SHL-WPK   Document 22   Filed 09/30/24   Page 4 of 11

of Health and Human Services, when they adjudicate claims for Medicare benefits. (ECF 1, ¶¶ 8, 45–46.) McWilliams appears to agree that federal jurisdiction exists pursuant to § 1442(a)(1), as he did not move to remand to state court.

In these circumstances, the Court must determine for itself whether federal removal jurisdiction exists pursuant to § 1442(a)(1). *See Reece v. Bank of N.Y. Mellon*, 760 F.3d 771, 777 (8th Cir. 2014) ("[W]e have an independent obligation to ensure the party asking us to exercise jurisdiction has proved we have jurisdiction to exercise."). As the parties who removed the case to federal court, Defendants bear the burden on that issue. *See Moss v. United States*, 895 F.3d 1091, 1097 (8th Cir. 2018) ("[T]he party invoking federal jurisdiction must prove jurisdictional facts by a preponderance of the evidence."). If that burden is satisfied, and if Defendants establish that McWilliams's claims "arise under the Medicare Act," the burden probably should shift to McWilliams to show that he satisfied the exhaustion requirement. *See Midland Psychiatric Assocs.*, 145 F.3d at 1003. However, as it is undisputed that McWilliams did not attempt to satisfy the exhaustion requirement, the allocation of the burden of proof on that issue is immaterial. The Court therefore will assume, in an abundance of caution, that Defendants bear the burden of proof on failure to exhaust, too.

Regardless of who bears the burden of proof, the Court will have to consider the state court petition from McWilliams's underlying medical malpractice suit when ruling on Defendants' Rule 12(b)(1) motion. (ECF 7-2.) For three different reasons, the Court may do so. <u>First</u>, the medical malpractice petition is "necessarily embraced" by McWilliams's pleading here. *See LeMay v. Mays*, 18 F.4th 283, 289 (8th Cir. 2021). <u>Second</u>, the medical malpractice petition is "part of the public record" and "do[es] not contradict the complaint." *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 (8th Cir. 2012). <u>Third</u>, although the distinction between a "facial" and "factual" attack on jurisdiction is unclear in the unique procedural circumstances here, the Court could treat Defendants' Motion to Dismiss as a factual attack on jurisdiction for which materials outside the pleading may be considered. *See Davis v. Anthony, Inc.*, 886 F.3d 674, 679 (8th Cir. 2018).

## III.    LEGAL ANALYSIS.

### A.  Background on Medicare Advantage Program.

Aetna is a Medicare Advantage Organization ("MAO") that provides Medicare benefits under Part C of the Medicare Act to individuals who enroll in one of Aetna's Medicare Advantage plans. *See* 42 U.S.C. § 1395w-22(a) (f/k/a Medicare+Choice Program). Medicare Part C was

enacted in 1997 to "allow beneficiaries to have access to a wide array of private health plan choices in addition to traditional fee-for-service Medicare . . . [and] enable the Medicare program to utilize innovations that have helped the private market contain costs and expand health care delivery options." *Minn. Senior Fed'n, Metro. Region v. United States*, 273 F.3d 805, 807–08 (8th Cir. 2001) (quoting H.R. Rep. No. 105–217, at 585 (1997) (Conf. Rep.), reprinted in 1997 U.S.C.C.A.N. 176, 205–06). Participating MAOs like Aetna "receive a monthly payment from CMS for each beneficiary enrolled." *United States ex rel. Holt v. Medicare Medicaid Advisors, Inc.*, --- F.4th ----, 2024 WL 4179221, at *1 (8th Cir. Sept. 13, 2024). The MAOs, in turn, provide "at least the same benefits as an enrollee would receive under traditional Medicare." *See Humana Med. Plan, Inc. v. W. Heritage Ins. Co.*, 832 F.3d 1229, 1235 (11th Cir. 2016). MAOs administer benefits pursuant to a contract with CMS, *see id.*, and are subject to significant regulatory oversight.

The parties' dispute revolves around Aetna's rights under the Medicare Secondary Payer Law ("MSP Law"). The MSP Law was enacted in 1980 to "reduce Medicare costs by making the government a secondary provider of medical insurance coverage when a Medicare recipient has other sources of primary insurance coverage." *Thompson v. Goetzmann*, 337 F.3d 489, 495 (5th Cir. 2003); *see also N.C. Ins. Guar. Ass'n v. Becerra*, 55 F.4th 428, 431 (4th Cir. 2022) (explaining that the MSP Law prohibits the Government from "footing the bill" for medical care covered by a primary payer). The MSP Law makes Medicare "secondary to other sources of insurance by forbidding Medicare payments when a primary plan—for instance, group health insurance or liability insurance—is reasonably expected to make payment for the same medical care; and by providing that certain Medicare payments are conditional and must be reimbursed." *Haro v. Sebelius*, 747 F.3d 1099, 1105 (9th Cir. 2014) (citing 42 U.S.C. § 1395y(b)(2)(A), (B)); *see also* 42 C.F.R. § 422.108(c) ("The MA[O] organization may bill, or authorize a provider to bill, other individuals or entities for covered Medicare services for which Medicare is not the primary payer, as specified in paragraphs (d) and (e) of this section."). Importantly, tortfeasors can be a "primary plan" under the MSP law. *See Aetna Life Ins. Co. v. Big Y Foods, Inc.*, 52 F.4th 66, 75–76 (2d Cir. 2022). Federal law dictates the procedures for reimbursement. *See* 42 C.F.R. § 422.108(f) ("A State cannot take away an MA[O] organization's right under Federal law and the MSP regulations to bill, or to authorize providers and suppliers to bill, for services for which Medicare is not the primary payer."). As explained by the United States District Court for the Southern District of New York:

> In practice, this system works as follows: In a situation where another party is ultimately responsible for paying the healthcare costs of a Medicare enrollee, the money may not be available at the time the services are provided. For example, if an enrollee is injured in an accident caused by a third party tortfeasor, that tortfeasor (or its insurer) is ultimately responsible for the payment of the enrollee's healthcare costs as a result of the accident. But the enrollee will not likely receive the proceeds of any settlement with, or judgment against, the tortfeasor in time to pay her hospital bills. In such a situation, Medicare will pay the hospital bills on the condition that either the tortfeasor reimburse the Medicare Trust Fund directly, or the enrollee reimburse the Trust Fund, to the extent she has already received monies from the tortfeasor.

*Potts v. Rawlings Co., LLC*, 897 F. Supp. 2d 185, 188 (S.D.N.Y. 2012). To help effectuate its goals, the MSP Law provides subrogation rights: "With respect to services for which Medicare paid, CMS is subrogated to any individual, provider, supplier, physician, private insurer, State agency, attorney, or any other entity entitled to payment by a primary payer." 42 C.F.R. § 411.26(a). MAOs "exercise the same rights to recover from a primary plan, entity, or individual that the Secretary exercises under the MSP regulations in subparts B through D of part 411 [including 42 C.F.R. § 411.26]." 42 C.F.R § 422.108(f).

   B.   *The Court Has Removal Jurisdiction Pursuant to 28 U.S.C. § 1442(a)(1).*

Before the Court can address any other aspect of the parties' dispute, it must satisfy itself that Defendants properly removed the case to federal court despite McWilliams purporting to bring only state law claims. Defendants removed pursuant to 28 U.S.C. § 1442(a)(1), which allows removal of any civil action against "any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office." Defendants assert that they are acting under color of CMS when they administer Medicare Part C benefits and seek reimbursement from Medicare Part C enrollees.

Section 1442(a)(1) is an exception to normal removal rules because it allows removal in some circumstances even if the basis for removal is not apparent from the face of the plaintiff's complaint. *See Buljic v. Tyson Foods, Inc.*, 22 F.4th 730, 738 (8th Cir. 2021). "The federal officer removal statute is to be 'liberally construed,' and thus the typical presumption against removal does not apply." *Id.* (quoting *Cnty. Bd. of Arlington Cnty. v. Express Scripts Pharmacy, Inc.*, 996 F.3d 243, 250–51 (4th Cir. 2021)). The Supreme Court has interpreted the words "acting under" in the statute to include private entities involved in "an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior." *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147, 152 (2007). For

Defendants to qualify, the relationship between them and CMS must involve "subjection, guidance, or control" and go beyond Defendants' mere obligation to comply with the law. *Id.* at 151–52. The crucial question is whether CMS is properly understood as having *delegated its authority* to Defendants, as opposed to merely *regulating* Defendants. *Id.* at 157.

There is a split of authority on whether MAOs are entitled to remove under the federal officer removal statute when they are sued for actions taken in connection with their administration of benefits under Medicare Part C. *Compare, e.g.*, *Ohio St. Chiropractic Ass'n v. Humana Health Plan, Inc.*, 647 F. App'x 619, 622–23 (6th Cir. 2016) (holding that an MAO does not "act under" a federal officer for purposes of § 1442(a)(1)), *with Yeomans v. Blue Shield of Cal.*, --- F. Supp. 3d ----, 2024 WL 263917, at *2 (C.D. Cal. Jan. 24, 2024) ("[T]he majority of district courts . . . have held that MAOs administering Part C benefits fall within the category of highly regulated private contractors described in *Watson* and thus are 'acting under' CMS in a manner that entitles them to removal under § 1442(a)(1)."). The Eighth Circuit has not directly addressed the question, but it has decided two cases that provide considerable guidance.

First, in *Jacks v. Meridian Resource Co., LLC*, the Eighth Circuit held that a private insurer could remove under § 1442(a)(1) when it was sued in a putative class action for its administration of insurance benefits under the Federal Employees Health Benefits Act of 1959 ("FEHBA"). *See* 701 F.3d 1224 (8th Cir. 2012), *abrogation on other grounds recognized by Buljic*, 22 F.4th at 742. *Jacks* is strikingly similar to the instant case in that the plaintiff asserted state law claims complaining about the private insurer's filing of subrogation liens in tort cases. *Id.* at 1228. *Jacks* held that the private insurer properly removed pursuant to § 1442(a)(1) because the insurer "help[ed] the government fulfill the basic task of establishing a health benefits program for federal employees" and therefore was acting "under color of" the relevant government agency. *Id.* at 1233. In other words, "the federal government has sufficiently 'delegated' authority to [the private insurance] carriers to undertake the task of insuring federal employees." *Id.*

Second, and conversely, the Eighth Circuit held that a private insurer could *not* remove under § 1442(a)(1) when it was sued in a putative class action for the alleged mishandling of patient health information on the insurer's website. *See Doe v. BJC Health Sys.*, 89 F.4th 1037 (8th Cir. 2023). The insurer argued that it was "acting under" the authority of the United States Department of Health and Human Services ("HHS"), but the Eighth Circuit disagreed because the insurer was not operating as a government contractor; instead, at most, it was simply a private actor in a "highly

regulated arena." *Id.* at 1045. The Eighth Circuit further explained that the insurer's website "was not a federal government website, it was not a website BJC operated on the federal government's behalf or for the federal government's benefit, and it was not a website the federal government directed BJC to create or operate." *Id.* Importantly, the Eighth Circuit distinguished *Jacks* by emphasizing the difference between insurance carriers that "act as government middlemen and deliver federal benefits to federal beneficiaries" versus carriers that "create[] and operate[] an online portal" for its own business purposes. *Id.* The insurer in *Jacks* fell in the former category, while the insurer in *Doe* fell in the latter.

Defendants here are "act[ing] as a government middlemen and deliver[ing] federal benefits to federal beneficiaries." *Id.* Indeed, the only difference between Defendants and the private carrier in *Jacks* is that the latter provided benefits to federal employees pursuant to the FEHBA, whereas Defendants provide benefits to Part C beneficiaries pursuant to the Medicare Act. For purposes of the officer removal statute, however, this difference is immaterial. If the carrier in *Jacks* was entitled to remove pursuant to § 1442(a)(1), Defendants are, too. Removal jurisdiction therefore exists.

   *C.  Exhaustion Requirement.*

The Medicare Act contains a "nonwaivable and nonexcusable requirement that an individual present a claim to the agency before raising it in court." *Shalala v. Ill. Council on Long Term Care, Inc*., 529 U.S. 1, 15 (2000). It does so by "borrowing" the administrative review procedures from the Social Security Act, s*ee Haro*, 747 F.3d at 1105, which only permit judicial review of "any final decision" of the Commissioner or, as modified by the Medicare Act, the Secretary or the Department of Health and Human Services, *see* 42 U.S.C. § 405(g) (authorizing judicial review of "any final decision of the Commissioner of Social Security") *and* 42 U.S.C. § 1395w-22(g)(5) (making 42 U.S.C. § 405(g) applicable to appeals of benefits denials under Medicare Part C). For enrollees dissatisfied with benefit determinations by MAOs, the administrative process involves at least four steps, culminating in review by the Medicare Appeals Council. Only after the final step may enrollees bring suit in federal court. *See Aylward v. SelectHealth, Inc*., 35 F.4th 673, 678 (9th Cir. 2022) (explaining steps); *see also Glob. Rescue Jets, LLC v. Kaiser Found. Health Plan, Inc*., 30 F.4th 905, 913 (9th Cir. 2022) (same). Until the administrative review process is complete, the Act divests federal courts of jurisdiction to hear a Medicare dispute. *See Shalala*, 529 U.S. at 5 (holding that 42 U.S.C. § 405(h), incorporated into

the Medicare Act by § 42 U.S.C. § 1395ii, bars federal-question jurisdiction for actions to "recover on any claim arising under" the Medicare laws).

To determine if an enrollee was required to exhaust his administrative remedies prior to bringing a claim, courts must determine if the claim "arises under" the Medicare Act. "Claims 'arise under' the Medicare Act in two circumstances: '(1) where the "standing and the substantive basis for the presentation of the claims" is the Medicare Act; and (2) where the claims are "inextricably intertwined" with a claim for Medicare benefits.'" *Glob. Rescue Jets, LLC*, 30 F.4th at 917 (quoting *Heckler v. Ringer*, 466 U.S. 602, 614–15 (1984)). "A claim may arise under the Medicare Act even though, as pleaded, it also arises under some other law." *Midland Psychiatric Assocs.*, 145 F.3d at 1004. When a plaintiff is essentially claiming that Medicare should have paid for services—i.e., when a claim "necessarily mean[s] redeciding" a Medicare decision—the claim "arises under" the Medicare Act regardless of its label. *See id.* (tortious interference claim was jurisdictionally barred).

> D.  *McWilliams's Claim "Arises Under" Medicare and Thus He Was Required to Exhaust Administrative Remedies.*

It is undisputed that McWilliams did not exhaust his administrative remedies before bringing suit. He argues, however, that he did not need to do so because he is not challenging the amount of reimbursement for medical expenses; instead, in his words, "[t]his case is about extortion – pure and simple." (ECF 8-1, pp. 2, 8.) In his view, this means his claims do not "arise under" the Medicare Act. By contrast, Defendants argue that the core of McWilliams's claim is his dissatisfaction with having to repay the $7,980.09 in medical benefits, and thus his state law claims are "disguised claims" for benefits. (ECF 7-1, p. 16.)

When determining if claims "arise under" the Medicare Act, courts put substance over form. *See Midland Psychiatric Assocs.*, 145 F.3d at 1004. This means courts are free to disregard the labels attached by a party to the claims. *See id.* Courts also do not need to determine whether the agency would have the authority to hold a hearing on the dispute, as such a determination is "beside the point." *Shalala*, 529 U.S. at 23. Instead, courts simply must decide whether the claim is "at bottom, a claim that [an enrollee] should be paid" for medical expenses. *See Heckler*, 466 U.S. at 614. If so, the claimant must exhaust administrative remedies pursuant to § 405(g).

McWilliams's claim is, "at bottom," a claim that Aetna should have paid the $7,980.09 in medical expenses without later demanding reimbursement. Indeed, he says as much in his pleading, which alleges that he was "deprived of money and property" and "forced to pay medical expenses that . . . Aetna was obligated to pay." (ECF 1-1, ¶¶ 69, 74.) Claims of this nature are

"inextricably intertwined" with a claim for benefits, regardless of how they are pled. *See Heckler*, 466 U.S. at 614 (holding that a claim "arose under" the Medicare Act because it sought a declaration that the enrollee's medical expenses were reimbursable). This is because the success of McWilliams's claim depends on whether Defendants had a right to recoup the conditional payments Aetna made, which "necessarily mean[s] redeciding" a claims decision. *See Midland Psychiatric Assocs.*, 145 F.3d at 1004; *see also Potts,* 897 F. Supp. 2d at 194 (exhaustion of remedies was required where the plaintiff's claims "necessarily turn on the interpretation of the Medicare Act's secondary payer provisions for MA[O] organizations"). Courts have consistently held that claims like these "arise under" the Medicare Act and are subject to the exhaustion requirement of § 405(g). *See Haro*, 747 F.3d at 1111–12 (dismissing purported class action by beneficiaries regarding Secretary's practice of seeking reimbursement under the MSP Law following tort settlements); *Taransky v. Sec'y of U.S. Dep't of Health & Hum. Servs.*, 760 F.3d 307, 321 (3d Cir. 2014) (dismissing beneficiary's due process claim that agency "failed to follow the law controlling Medicare's reimbursement rights" as an "artful attempt" to rephrase her primary argument, that the agency misinterpreted its right to reimbursement under the MSP Law); *Fanning v. United States*, 346 F.3d 386, 400–02 (3d Cir. 2003) (dismissing class action by beneficiaries alleging that the agency was not entitled to recover Medicare overpayments from a fund created as a result of a settlement with an alleged tortfeasor).

It does not matter that McWilliams purports to raise only state law claims, as a "claim may arise under the Medicare Act even though, as pleaded, it also arises under some other law." *Midland Psychiatric Assocs.*, 145 F.3d at 1004. To that end, courts have uniformly held that claims like his are subject to the exhaustion requirement. *See Potts*, 897 F. Supp. 2d at 193–94 (holding that the exhaustion requirement applied to unjust enrichment and deceptive business practices claims brought by MAO enrollees who objected to the use of subrogation liens following tort settlements); *Collins v. Wellcare Healthcare Plans, Inc.*, 73 F. Supp. 3d 653, 662 (E.D. La. 2014) ("While [plaintiff] fashions her claim as a declaratory judgment and invokes Louisiana State Law, she ultimately seeks to retain her benefits based on an argument that the Medicare Act does not afford Wellcare a subrogation right. Such a claim arises under the Medicare Act."); *Phillips v. Kaiser Found. Health Plan, Inc.*, 953 F. Supp. 2d 1078, 1090 (N.D. Cal. 2011) ("Even assuming that the 'essence' of the Complaint is to enjoin unfair and unlawful creditor actions . . . [defendant's] creditor actions are unfair and unlawful only if [defendant] is going beyond its rights

under the Medicare Act to collect reimbursement as a secondary payer . . . Plaintiff cannot raise that claim without exhausting it because it is a disguised claim for benefits."); *Einhorn v. CarePlus Health Plans, Inc.*, 43 F. Supp. 3d 1329, 1332 (S.D. Fla. 2014) (rejecting plaintiff's argument that her state consumer protection claim fell outside the scope of the Medicare Act and was not subject to exhaustion requirement). McWilliams cites no authority to the contrary.

It also does not matter that McWilliams seeks damages in excess of his medical expenses. "A party cannot avoid the Medicare Act's jurisdictional bar simply by styling its attack as a claim for collateral damages instead of a challenge to the underlying denial of benefits." *Bodimetric Health Servs., Inc. v. Aetna Life & Cas.*, 903 F.2d 480, 487 (7th Cir. 1990). "If litigants who have been denied benefits could routinely obtain judicial review of these decisions by recharacterizing their claims under state and federal causes of action, the Medicare Act's goal of limited judicial review for a substantial number of claims would be severely undermined." *Id.*

Because McWilliams's claims "arise under" the Medicare Act, they are subject to the exhaustion requirement of § 405(g). As it is undisputed that McWilliams did not exhaust administrative remedies, the Court lacks subject matter jurisdiction to hear his case. *See Shalala*, 529 U.S. at 15 (exhaustion is a "nonwaivable and nonexcusable" requirement). Dismissal is required.[1]

## IV.    CONCLUSION.

Although McWilliams purports to bring common law and statutory claims under Iowa law, his claims are "at bottom" a challenge to Defendants' ability to recoup conditional payments under the MSP Law. The Court cannot hear his claims unless and until he exhausts administrative remedies pursuant to § 405(g) of the Medicare Act. The Court therefore GRANTS Defendants' Motion to Dismiss (ECF 7) and directs the Clerk of Court to enter judgment for Defendants.

IT IS SO ORDERED.

Dated: September 30, 2024

STEPHEN H. LOCHER
U.S. DISTRICT JUDGE

---

[1] Because the Court is dismissing for lack of subject matter jurisdiction, it will not address the parties' arguments about preemption and the proper interpretation of Iowa Code § 147.136(1).